Dear President Taylor,
¶ 0 This office has received your request for an Attorney General's Opinion in which you ask, in effect, the following questions:
1. Does the failure of a municipal official to file an oath ofoffice as required by law operate to create a vacancy in theoffice?
2. Are the actions of elected municipal officials valid eventhough there may be a subsequent determination that one or moreof the officials are disqualified to hold the office?
 I.
¶ 1 Your first question asks whether the failure of a municipal officer to file an oath of office operates to create a vacancy in the office. Article XV, § 2 of the Oklahoma Constitution requires all public officers to take and subscribe to its oath or affirmation of office, and it authorizes the Legislature to prescribe further oaths or affirmations.[1] The Oklahoma Municipal Code at 11 O.S. 1991, § 8-103[11-8-103] provides:
 Any officer, elected or appointed, before entering upon the duties of his office, shall take and subscribe to the oath or affirmation of office prescribed by the Oklahoma Constitution. The oath or affirmation shall be filed in the office of the municipal clerk.
¶ 2 Upon failure of a newly elected municipal official to qualify within thirty (30) days of the term, the office becomes vacant by operation of 11 O.S. 1991, § 8-102[11-8-102], and it is to be filled at the next general election in compliance with 11 O.S.1991, §§ 16-101[11-16-101] through 16-213. Statutory qualifications for an elected municipal official include being a resident and registered voter of the municipality and all council members must be residents of their respective wards, 11 O.S. 1991, § 8-101[11-8-101].
¶ 3 Article XV, § 2 states that "any person refusing to take said oath, or affirmation, shall forfeit his office," but it makes no such direct statement about failure to file the oath of office when it is actually taken and subscribed. The Oklahoma cases in this area have dealt with collateral attacks upon the official's actions by attempting to have such official disqualified and his actions determined to be a nullity. These cases are discussed in Section II below. We have found no Oklahoma case which has determined a public official's office vacant for failure to file the required oath upon actually taking and subscribing to the oath as required. In Melton v. FirstNational Bank, 233 P. 441 (Okla. 1924), the defendant collaterally attacked the judge's authority in the matter because the judge filed his subscribed oath of office with the court clerk rather than the county clerk as required by law. The Oklahoma Supreme Court ruled as follows:
 Where a special judge has been duly elected to try a cause, and, before performing any judicial act, takes and subscribes to the oath, as provided by law, the mere fact that the oath reduced to writing was inadvertently filed with, and in the office of, the court clerk, instead of in the office of the clerk of the county, will not disqualify such special judge from entering upon the duties of his office.
Id. at 441, Syllabus 2.
¶ 4 In Hendrick v. Walters, the Oklahoma Supreme Court was asked to determine whether Governor Walters forfeited his office by his failure to take an oath in the form prescribed by 51 O.S.1961, § 2[51-2]:
 The court must be mindful of this state's strong statutory policy (as well as that of the surviving common law) which disfavors both private- and public-law forfeitures. Courts will neither search for a construction that will bring about a forfeiture, nor adopt a meaning which would produce that effect, unless the language of the statute or constitutional provision under consideration-giving due respect to its purpose and to extant circumstances-clearly demonstrates the legislature intended that a forfeiture take place.
Hendrick v. Walters, 865 P.2d 1232, 1238-9 (Okla. 1993).
¶ 5 Further, the Court notes that statutes which call for forfeiture of an incumbent's official position "are penal and must be strictly construed." Id. at 1239 n. 32 (citations omitted).
¶ 6 Therefore, the failure of a municipal official to file an oath of office in the municipal clerk's office within thirty (30) days of taking and subscribing such oath does not operate to disqualify the official or to create a vacancy in the office.[2]
 II. OFFICERS DE FACTO
¶ 7 Your second question asks whether the actions of elected municipal officials are valid even though there may be a subsequent determination that one or more of the officials are disqualified to hold the office.
¶ 8 In the case of Hatfield v. Jimerson, 365 P.2d 980 (Okla. 1961), the local school board voted to set a general election for annexation by an adjoining district. To challenge the election, a taxpayer alleged the board's vote was void because the members had failed to follow the loyalty oath act by filing their individual oaths in the office of county superintendent, rather than in the office of county clerk as required by the statute. Prior to this challenge the board members had held office and functioned as such for more than one year. Except for misfiling their oaths, they were in all other respects duly qualified to hold office. The Supreme Court determined these board members to be "officers de facto" without ruling on their status as office holders under the law, and it restated the following general principle, at page 982:
 An `officer de facto' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the functions of the office are exercised by one who was in the actual possession of it under color of title.
. . . .
 The result of the authorities is that title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked.
Hatfield, 395 P.2d at 982 (citations omitted).
¶ 9 The Court upheld the actions of the board as being at least those of officers de facto, and it refused to allow an attack upon their vote by a taxpayer collaterally challenging their office status.
¶ 10 In the case of Ajax Contractors v. Myatt, 424 P.2d 30
(Okla. 1967), the City Council of Altus voted to accept a bid for public works by Ajax Contractors. A competing contractor lost the award by one vote and later challenged the council award by alleging one of the member positions had become vacant because its holder had moved his residence outside of the position's district. The Supreme Court ruled that the fact that a vacancy had arisen in a council position was to be determined by the city council as the authority to fill the position by law; further, that the council had taken no such action to determine the position vacant and that it considered the disputed member to be in good standing at the time of the vote. The Court considered this to be a collateral attack on the council member's position because plaintiff was not seeking title to the position, rather to void the vote of the one in actual possession of it. The Court held that the challenged member was in actual possession of the office under color of title and was at least a de facto officer; and it upheld his actions and the vote of the council under the principles of policy and justice as they involved the interests of the public and third persons.
¶ 11 Therefore, as to your second question, even if elected municipal officials fail to qualify for their offices as required by statute, such incumbents who are otherwise fully qualified would be officers de facto, and their acts will be upheld as valid upon principles of policy and justice.
¶ 12 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The failure of an elected municipal official to file an oathof office in the municipal clerk's office within thirty (30) daysof taking and subscribing such oath does not operate todisqualify the official or create a vacancy in the office. Okla.Const. art. XV, § 2; 11 O.S. 1991, § 8-101[11-8-101], 102, 103.
2. Even if there were a subsequent determination that electedmunicipal officials failed to qualify for their offices asrequired by statute, such incumbents would be officers de facto,and their official acts would be upheld as valid upon principlesof policy and justice.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOHN CRITTENDEN ASSISTANT ATTORNEY GENERAL
[1] Although municipal officers are listed in the oath requirements of 51 O.S. 1991, § 2[51-2], the Oklahoma Supreme Court has determined that said statutory oath adopted in 1910 was superseded by the adoption of Article XV, § 2 of the Constitution of Oklahoma by vote of the people in 1969. See Hendrick v.Walters, 865 P.2d 1232 (Okla. 1993).
[2] In Nesbitt v. Apple, 891 P.2d 1235 (Okla. 1995) the Oklahoma Supreme Court was asked to determine whether the office of Corporation Commissioner held by J.C. Watts had become vacant for his alleged failure to file his constitutional and statutory oaths of office with the Secretary of State for Oklahoma. However, the Court, at page 1240, ruled that it did not have subject matter jurisdiction to consider either the factual matters or the legal consequences of the alleged failure to file the oaths with the Secretary of State because petitioner Nesbitt had failed to allege or show that Mr. Watts had been given an opportunity to contest such a claim or show that Governor Walters made an express determination that a vacancy occurred by reason of the alleged failure to file the oaths of office.